In short, we proceed with our arguments this morning. We have one of the pleasurable events we have from time to time, admitting the departing law clerk, or at least the law clerk, into our bar. And for that, I will entertain a motion by Judge O'Malley. Thank you, Judge Lurie. I move the admission of Gabriela Hutt, who is a member of the bar and is in good standing at the highest court of Oregon. I have knowledge of her credentials and am satisfied that she possesses the necessary qualifications. I know a lot about Gabby. She's been my law clerk for the last year. She also was a graduate of my alma mater, went to Case Western Reserve Law School, and graduated at the top of her class there. But unlike me, she was much more industrious, and she also got her master's in biochemistry at the same time. She clerked before me for Leonard Davis on the Eastern District of Texas, so we know she has lots of patent experience. And I am going to be very sorry to see her go, but very welcome to it. But I want to welcome her to our bar and would love to see her appearing before us on a regular basis. So I move her admission. Thank you, Judge O'Malley. I'll consult with my colleague here. We grant the motion, and we welcome you to the bar. Please stand and take the oath from the clerk of court. Do solemnly swear that you will report yourself to the attorney and counsel of this court, upright and according to law, and that you will support the constitution of the United States of America. Congratulations. Welcome, Judge. Congratulations, Gabrielle. Hope to see you in the future. Good luck. You're welcome. Thank you. Getting to our regular course of business, we have four cases on the calendar this morning. Two from patent cases from the Patent and Trademark Office, a case from the Court of Federal Claims. The fourth case, government employee case from the Merit Systems Protection Board is submitted on the briefs and will not be argued. The first case is Retirement Capital Access Management v. U.S. Bank Corp., 2015-1039. Mr. Griffith. May it please the court. My name is Casey Griffith, and I'm here with my client and one of the co-inventors of the 582 patent, Mr. Craig Singer. We're here this morning appealing a decision, a final decision, in validating claims of United States patent number 6625582. And we have appealed this decision because we believe there are at least four independent reasons that there is no basis for the board's invalidation of our claims. And those reasons are that the claims pose no risk. Let me interrupt you first, Mr. Griffith. Do you accept that the question whether 101 is encompassed by the CBO analysis has been settled by Versada? Your Honor, I accept that the SAT v. Versada panel a few weeks ago did rule that 101 is a proper basis for CBO review. Our position is that the panel decision was incorrectly decided on that issue. But we're bound by it, right? Yes. Right. So we intend to pursue that position and seek en banc review or Supreme Court review. And I'm happy to make – I would point out, Your Honor, that we believe there are at least a couple of reasons that were not addressed by the panel decision a few weeks ago that warrant a different outcome. And I'm happy to discuss those with the court here this morning. But turning back to our basis, the substantive basis for the claims not being invalid, the first reason that the claims of the 582 patent are not invalid is that there is no risk of preemption posed by these claims. In the Supreme Court's Alice decision, the court confirmed that a preemption concern undergirds its 101 jurisdiction or jurisprudence. And furthermore – But these are abstract steps, aren't they? Simply abstract steps. Your Honor, we don't believe they are. In fact, one of the issues is that – or one of our points is that the abstract concept that was identified by U.S. Bank Court, we don't believe that's even an abstract concept. If you look at the petition they originally filed, they indicated that the abstract concept was the concept of advancing funds against future retirement payments. And yet if you look carefully at their petition, they don't even take the position that anyone had ever advanced funds against future retirement payments in their petition. Instead, what they really say is that the concept of advancing funds has been practiced. And the problem with that, Your Honor, is that in the final decision made by the board, they took the position over our objections that the concept of advancing funds against future retirement payments was a long prevalent economic practice when in fact there's no evidence that anyone was doing that before Mr. Singer invented the concept that's encompassed by the claims of the 582 patent. Is that, do you think, because of the specific reference to retirement as opposed to advancing funds in anticipation of future income? You wouldn't dispute that that proposition is commonly found in the lending economy, right? Your Honor, I would not, Judge Bryson, I would not dispute that prior to the time that my client conceived of the invention that loans, funds were advanced based upon future income, yes. So your argument is that when you specify that the future income will be retirement benefits, then now you've crossed the line from abstract to non-abstract? Is that your position? What I'm arguing, Judge Bryson, is that U.S. Bank Corp chose that as the abstract concept. And that being the abstract concept that's at issue in this case because it's their choice, it was not present for them. So that alone does take it outside of the scope of the subject matter eligibility. You take some language, I can see that there is language about something being well-known in terms of practice in the past. And there's language about preemption in the Supreme Court cases. But those aren't actually the test. Those are simply factors that the court looked at. Are you saying that either the PTAB or a district court would have to make an express finding that this precise type of concept was practiced in the past before it could be deemed abstract? Judge Romali, I do believe that in the – so if you look at natural laws, that would be one area where the natural law might be discovered, something that nobody knew about before. I don't believe you would have to show that's known before. But in the context of – or abstract business concepts or things that don't involve natural laws, I do believe that if someone is going to take the position that a business practice has been around for centuries or decades, they should have to show evidence to prove that. And the reason that's important is that – and what's frustrating for my client is that one month after the board issued its final decision in our case, Judge Ward, who authored our final decision, was on a panel in another case involving reversal of the rejections of claims under 101 coming up in ex parte prosecution. And that panel said that they reversed the 101 objection on grounds that there was no substantive evidence to support the idea that what those party or the examiner contended was an abstract concept was actually abstract. And the other reason we may have a difference here is that the board's final decision is dependent upon and expressly states that this abstract concept is something long prevalent in our economic system. And there's just no evidence to support that finding whatsoever. So, Mr. Griffith, why can't we just read the claims? Method of creating a source of funds. Designating an account. Designating a benefit provider. Authorizing a repository. Providing a monetary benefit. This is all – it may be very clever. It may be very useful in a commercial sense. But they are still abstract ideas that are shuffling data back and forth and ultimately money. Well, Judge Lori, I would take the position that since business method patents, and those are the method claims you're referring to. I'll get to the system claims shortly. But the method claims involve numerous steps. There's only – getting back to the issue of preemption, which is ultimately what the abstract concept exceptions to subject matter eligibility arises out of. There's no list of preemption here. There's so many reasons that we pointed out below. Deficiencies in the arguments made by U.S. Bank Corp. You're saying the idea of preemption preempts the idea of abstractness? Judge Lori, I do believe that there's no risk of preemption whatsoever. And I think that was even step four in the plurality opinion. I think Judge Romali was suggesting that the idea of preemption is really subordinate to abstractness. It's the abstract idea, which is basic Supreme Court doctrine, from which the preemption idea arises. Well, Judge Lori, our position is that you start with what they claim was the abstract concept. And there are numerous limitations on what they say is the abstract concept. They didn't even address some of those limitations before they didn't take the position that some of the limitations – actually, the only thing they took the position was abstract below was the concept of advancing funds based on future retirement payments. They didn't take the position that any other limitation on the claims was abstract. Well, if it's true that the concept of advancing funds based on future retirement payments is abstract, because it would seem to be at least modestly preemptive, not as preemptive as advancing funds based on any future income, but nonetheless a pretty large portion of future income would be represented by retirement benefits, I suppose. But if that's preemptive and abstract, isn't narrowing that field to Social Security benefits, for example, just choosing a field of use within the broader abstract idea? And isn't that what Alice said you couldn't do by way of getting around the abstract idea? Well, Judge Bryson, narrowing retirement payments to Social Security might be a field of use limitation that would not be sufficient under Alice. But there are many other limitations that aren't fields of use, aren't post-solution activity. Such as the repayment provision? Well, it's the requirement of a direct deposit, the requirement that funds be... The way it's specific has to happen a certain way. It has to be a non-collateralized, non-securitized loan. They can't encumber the right of the person receiving the funds and their future retirement payments. They have to absolutely, if the beneficiary revokes the ability of the source of funds to come after those retirement payments, they have to go get them at another source. And because of the involvement of direct deposit and human nature and people not changing where they're having funds deposited, it's all part of a total solution. None of these limitations, when they're added together, it's not just post-solution activity. It's not just field of use limitations. It's a specific, in the case of method claims, a specific method of generating a source of funds. And again, the other issue is, from a preemption standpoint, is the U.S. Bank Corp doesn't even contend that they don't even address some of the limitations on the claim. And some of these limitations they don't address. Judge Bryson, for example, it's not the Social Security limitation. It's limitations that we know are significant because they take the position that they don't infringe by not practicing that. And one other thing, and I'm running out of time, and I want to reserve some for Waddle. I do want to point out that our system claims, as pointed out in our briefing, satisfy the machine or transformation test under this court's precedent. And no court has held that claims that satisfy the machine or transformation test are directed to ineligible subject matter under 101. So the board's decision on that issue alone is unprecedented in ruling that way. I mean, how could it be unprecedented? Isn't that exactly what happened in Alice? I mean, if you had applied a pure machine or transformation test in the Alice case, then at least the system claims would have survived, would they not? Well, Judge Romali, the system claims here don't include – the reason I say under the court's precedent it satisfies the machine or transformation test is because the system claims in our patent include non-indefinite means plus limitations. U.S. Federal Court didn't challenge that they were indefinite under 112. The board construed the limitations, found they were – didn't find they were indefinite, but they construed those limitations. And under the court's precedent, system claims, machine claims having non-indefinite means plus function limitations are deemed to satisfy the machine or transformation test as a matter of law. And I believe that was actually an en banc decision by the Federal Circuit in Allapatt. And so that's something that would have to be overruled en banc by the Federal Circuit in our opinion. Unless the Supreme Court pretty much overruled it. And Judge Lorry, I would take the position that in fact, if you look at Bilski, Bilski specifically made references to the fact that – they referred to state street, and they said state street involved the machine claims, not process claims. So even in that case, the Supreme Court was recognizing that machine claims should be treated differently. And there's simply no machine claims under the court's precedent. In other words, we wouldn't even necessarily hear about Bilski if the claims at issue in that case had originally satisfied the machine or transformation test. We'll save three minutes for rebuttal. Thank you, Your Honor. Frank Korf from the Patent Office is splitting their time. Mr. Dowd. Good morning, Your Honor. May I please report Matthew Dowd to the appellee? I have ten minutes. My colleague from the Patent Office has five minutes. I'd like to address the last point that my colleague, Mr. Griffith, raised. And his proposition that this court's precedent requires a finding that a claim in means plus function format is patent eligible under 101. You mentioned Alice. Now, there is no discussion in Alice, the Supreme Court case itself, that deals with means plus function. But if you look at some of the underlying claims of the 720 patent at issue, there are about five dependent claims that have a means plus function limitation in there. So under that ruling itself, the Supreme Court found no reason to distinguish between a system claim and a means plus function claim. Well, they didn't actually address that question. That's correct, Judge Romali. But more specifically, if you go back to this court's precedent from CCTA cases, there are at least two instances where this court has expressly stated and ruled that simply because a claim is in means plus function format, that doesn't mean it satisfies 101. And so if you look at In re Abelli, for example, In re Abelli dealt with a CAT scan type invention. Of course, those were for Allopat, right? That's right. But Allopat itself, if you go back to Allopat, Allopat itself does not rule expressly that simply because a claim is in means plus function format, it satisfies 101. The underlying method claims in Allopat dealt with a so-called rasterizer. That dealt with the specifics of analyzing oscilloscope type wave signals. Judge Lori, you're on that panel, so you know it better than I do. But the point in that case was that the method claim itself was deemed to satisfy 101. And so there's no basis to say that means plus function by itself made the patent eligible. If you go back to Abelli, Abelli is a good example because in Abelli, there were three claims discussed in detail, claims 5, 6, and 7. Claim 5 was a method claim, and claim 5 talked about this method of calculating. And it wasn't tied to the specific use of analyzing CAT scan, for example. Claim 6 was more narrow, and it dealt with a specific tangible result that related to CAT scan. Both were method claims, and the court found that claim 5 was patent ineligible, claim 6 was eligible. Claim 7 was essentially the method claim, but in means plus function format. It had the same process steps, but the only distinction was that it said this is a system, and it included means plus function limitations. And the court said that there was no reason to distinguish an abstract method claimed in process format versus a means plus function that really recites the same process steps. Again, in In re Meyer, the court came to the same conclusion. If you go back to another case, In re Freeman, and this goes back to the old Freeman-Walter Abelli test, and I'm not suggesting that the court revive that. But in In re Freeman, there's a really good discussion about means plus function. And in that case, in that case specifically, the court found that the system claims satisfied the 101. But it was basically because the method itself was specific enough, tangible enough, not preempting that it satisfied 101. But within that discussion, the court said, and I'm paraphrasing, to the extent that we agree with the solicitor's contention that it would be anomalous to allow a claim in means plus function format if the underlying method did not satisfy 101. And so this proposition that means plus function by itself can satisfy patent eligibility, even in the face of an abstract underlying method, is, in our opinion, wrong. It's consistent with the court's case law in holding that a means plus function format is ineligible. And it's consistent with the newer case law as well. And I think when you look at the underlying patent here at issue, it's consistent with some of the newer cases that deal with system claims, for example. Now, a system claim— Well, don't we—I mean, aren't factors like preemption and whether or not something was well known, aren't—those are facts that are things we're supposed to at least consider. They may not each be determinative, but it seems that the board sort of just blew past those facts. I wouldn't say the board blew past those facts, Your Honor. And I think from what we've heard today and what we heard at the underlying case at the board, we didn't hear anything from the Patent C that indicated that there were facts that needed to be determined or found to say that even the narrower claims were specific enough to get out of the current case law under Alice and this court's more recent precedent. If you look at—let me turn to one point that my colleague makes. And he, in the brief and today, complains about the lack of so-called evidence. And I think this court has addressed this issue quite fulsomely in the line of cases that have countenance the decisions by district courts to deal with these patents under a 12b6 motion. The court knows that under certain circumstances, there's no fact-finding and there's no expert opinion. And more expressly in content extraction technology—technology is a more recent case from this court, I think within the past month or two—the court specifically addressed this. There isn't always a need to have an expert opinion or a fact. And to Judge Bryson's point, in terms of trying to get out of the holding or the rulings of Alice and this court's precedent, simply be trying to make this distinction between future retirement payments and Social Security payments. In that type of distinction, we agree it makes the subsequent claims or dependent claims narrower, but it is not the type of distinction that is the basis of patent eligibility. And if anything, that type of distinction and that type of subject matter goes to the very heart of what Alice, Bilski, and other cases have said are the types of inventions, if you will, that don't need patent protection. They go to economic relationships. They go to contractual relationships. And that's exactly what Alice and Bilski dealt with. And I could recite cases from this court as well. For example, Judge Lloyd-Cybersource, a number of other cases—Fort Properties, for example. Fort Properties dealt with managing real estate portfolios. And all these cases, the underlying theme is that when there is a question or a process or even a system that embodies that process, and all it is doing— and that the courts have crept up to the edge but not been willing to cross the red line? Well, that's a good question. The court hasn't gotten to that edge yet. Most questions from the court are. Fair enough, Judge Lloyd. We don't have to reset the decision in this case. That's for certain. I think that's the way the case law is trending. There is certainly the argument that Judge Mayer makes in a number of his concurrences that when you look at the Supreme Court precedent and when you look at this court's precedent, a perhaps better test than what the Supreme Court has offered currently is what he calls a technological arts test. And you see some of that in the court's precedent. And so when you get to inventions that deal with economic activity, when you deal with human behavior—for example, there's a 1994 case from this court in Ray Schrader, and that dealt with the method of auctioning. And it's no different than the more recent case of OIP Technologies versus Amazon, which was the same type of invention that someone was trying to patent. And it's simply a method of conducting an activity. And those types of inventions, I think, are no longer the types of inventions that warrant patenting. They occur without the incentive. On top of that, let me turn to one other thing that I would like to mention. Sorry, I lost my train of thought, but this is another trend I think that you see in some of the case law, which they haven't made—there's no per se decision on this. But when you get to perhaps business-type method inventions that can't be done with the human mind, that might take it outside of this class of exceptions that the courts have talked about. And you see types of inventions that involve so much complexity that people by themselves and without complex computer algorithms cannot do. So where do you draw that line? I mean, what are we talking about? Fortunately, that's not my job, because I can't tell you where it is. So if there's a lot of calculus— We need you to help us with our job. I would like to, but I would say that I would like to come back with the proper case and help you more. This is not that case, because there's no doubt that the underlying process that's claimed here can be done simply by people working together. And on top of that, using a basic computer without any specific fancy algorithm. There's no algorithm in this. At some point, things can be done much more quickly, much more efficiently. You can keep track of movements of funds. Why isn't there a point at which the use of the computer makes it so much of a better method, that it would fall outside the bounds of the abstraction? Judge Romali, I think there is. And the problem with a lot of these patents, though, is that the claims, the way they're drafted, don't require those limitations. And you saw some of that discussion in the Alice case. And I'm thinking back to the oral argument at the Supreme Court. And it was mentioned that, well, this invention covers this extraordinarily complex system of exchanging risk settlements among parties, among different nations, thousands and thousands, millions of times a day. The problem is that the claim didn't require that. And you saw that in other cases at the Supreme Court as well, too, at the Federal Circuit. And this goes to a non-presidential case, Planet Bingo, for example. Planet Bingo was directed to a method of managing a bingo game, essentially. The argument was made that what it's actually covering is so complex because there are so many players and so many numbers involved that you need a computer to do it. The problem, as this court noted in its opinion, was that the claims weren't tailored that narrowly. And I think if you get to that point— Mr. Joud, you've exceeded your time, but we won't deprive Ms. Hunter of her full five minutes. Thank you, Your Honor. Let's move on. Good morning. May it please the Court. Lori Hunt for the Patent Office. Really, I don't think we have much to add to Mr. Joud's thorough discussion. I know we did reserve the five minutes, but I think he did a good job of covering much of what we would want to say. Does the PTO think there's any business method that would be patent eligible? We certainly leave that open. It's true that it's hard to come up with a great example that does not involve some technology. The Supreme Court argument, for example, the Solicitor General's attorney gave the example that involved a point-of-sale transaction that included a level of encryption. So we certainly don't rule out that there could be, and recently we don't take that position in the brief. But I will admit that it's somewhat hard, and I don't have one today, I've been trying to think of one, to think of a good example of a business method that doesn't involve some technology that would meet the Supreme Court's test. Now, that might just be a failure of our imagination, of my imagination at this point. Well, what do we make of the fact that when the Congress passed the AIA, they set up this whole business method review, but they didn't just say all business patents should go down? That's a good point, Your Honor. They did not, and their test does not make that clear, does not make it clear. It makes clear that there needs to be a technological, to get in the CBM proceeding, there needs to be a solution to a technological problem or to get out of it, excuse me. So there was not any conscious decision in the AIA to exclude all business method patents. I think it's somewhat of an open question, and I think that, as Mr. Dodd said, this case doesn't present this. We're not in that territory. And there may be a case that will come up where the facts are a lot more interesting, at least from my perspective, where the line is closer to being met, where there is no technology, but it's a pure business method, where that might meet the 101 test. Congress, I suppose, in part, this is a problem of trying to define what we mean when we say business method. And if what we mean when we say business method is a method of interacting with other people without any technological implementation, then we've defined the term in a way that's perhaps narrow enough to say that all of those kinds of claims go away. Let me give you an example that actually my law clerk came up with that struck me as being maybe astride the line, depending on how you define business method. But Google's method of linking searches to advertisements, you could call that, I suppose, a business method, at least as broadly stated, if not limited just to Internet searches. How would that strike you as a patentable invention? It certainly had a significant effect on the market in the Internet. I think it would depend on how it was claimed, but looking at this course, for example, the DDR opinion or even Alice, there could be a substantial technological portion of that. But maybe the idea might be abstract of linking advertisers to search results. It might be an abstract idea, but there might be enough more in the claim, especially where it's a problem that would not necessarily arise in the same way that it arises on the Internet as it might have earlier. You can always make an analogy in these cases at some level of generality that this is just like something else that we've already known about almost always. It seems that much of what the Supreme Court wants us to do here is reason by analogy. Unlike a lot of patent law where the rules are a lot clearer and the history of patent law seems to have depended on more clear rules, I think that the Supreme Court is making this more of an open test. I've had a lot of antitrust experience. It seems more like some of the antitrust tests where it's really analogizing a lot to the court's prior findings. I think in that case, in the Google search case, you could envision, depending on the claims, you could envision enough more in the claims where there's nothing that's conventional and routine and where the idea may not be so abstract, particularly where it is applied to a technological arena that was, at the time, novel. At the time, not longstanding. At the time, the idea was not sufficiently connected, the abstract idea of connecting advertisers to search results. There may not have been search results before. Looking up in the white pages and connecting, looking at ads in the white pages and putting an ad next to the thing that you're looking up in the white pages, that's the analogy one could make. I think that these are really fact-by-fact cases that depend on the claims, so almost anything, if you phrase it broadly enough, can be an abstract idea. That's the problem in this area. Exactly, exactly. It's something that I think remains to be worked out, and I think the intention must be to work it out by analogy on a case-by-case basis. Do you have a final thought on this case? I'm sorry? Do you have a final thought relating to this case? My final thought is just that we would agree that Versada binds on the 101 issue. Thank you. Mr. Griffith has a little rebuttal time. Thank you. We do have clear rules here. The clear rule is we're not just saying that if you include means plus limitations, you satisfy the machine or transformation test, but if they're not indefinite, that is the holding. That is the existing case law. If they're not indefinite, they satisfy that test, and no court, again, has held that claims that satisfy the machine or transformation test are merely directed to an abstract concept. The other thing I want to point out is there's really… Let me make sure I understand your position. Are you saying that a claim such as Alice, which read on a computer, would have been patent eligible if instead of saying a computer does the following, it said means for calculating? Well, Justice Bryson, I'm not sure that would be sufficient to satisfy Section 112, Paragraph 6, and the issue is they didn't challenge our claims on that basis here. Let's suppose that it would satisfy 112.6 because I would assume that means for calculating and describing in the specification, the computer, would be sufficient for 112.6. Are you saying that would be enough of a tweak to the patent in Alice to make Alice's patent eligible? I'm saying under this court's existing law, that would be enough. So, yes. Yes, I am, Justice Bryson. Okay. Quickly, I want to point out that neither U.S. Bank Corp. or the Patent Office have really addressed a lot of the deficiencies in the final decision that we've raised. We don't believe that it's proper for that decision to be rewritten by the Federal Circuit to correct those deficiencies. Congress has specified this procedure, and to the extent that 101 is a proper basis for CBM review, they were required to come forth with evidence. They were required to do this properly, and there's going to be thousands of appeals coming from the Patent Office, and if the Patent Office and the petitioners don't do their job and introduce evidence to the extent it is required, when required, and make the proper arguments and apply the law correctly and not inconsistently as they've done with respect to my client, the decision should not be affirmed. It should be reversed. Before you sit down, what are the two issues that the panel missed in Versada? Your Honor, the two issues the panel missed in Versada, the first issue is I want to point out that they implied that Congress passed the covered business method review knowing the court had already, the courts with long standing pressing had already established that 101 was a defense to patent infringement. We've gone back and looked and noted that no decision by the Federal Circuit or the Supreme Court had invalidated an issued patent on the basis of 101 until the cyber source decision, which was in August of 2011. And in fact, the Senate and the House had both already passed the covered business method review procedure prior to that decision. So to the extent that Congress is presumed to have acted knowing what the law is, the law at that time actually was that 101 is not a defense to patent infringement, which actually supports our argument that it's not a condition of patentability. Thank you, Mr. Griffiths. We'll take the case on resignment. Thank you, Your Honor.